Elijah Ephraim **JHIRAD**, Petitioner,

v.

Thomas E. **FERRANDINA**, United States Marshal, Southern District of New York, Respondent.

Nos. 72 Civ. 4026, 73 Civ. 1630.

United States District Court,
S. D. New York.

Jan. 30, 1974.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for petitioner, by Edward L. Sadowsky, New York City, of counsel.

Edwin A. Steinberg, Louis Steinberg, New York City, for Government of India.

---

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The pending order to show cause presents but another development in this international extradition case by which the government of India seeks the return of petitioner Jhirad to stand trial on the charge of embezzling a portion of a Naval Prize Fund which he had previously administered. After a Section 3184 hearing, Magistrate Goettel found that there was probable cause for the requested extradition. However, the petitioner asked this Court to prevent the extradition on the basis that the applicable five year statute of limitations had run. Holding that the statute was tolled by mere absence from the jurisdiction, regardless of the petitioner's intent in leaving, I denied two writs of habeas corpus. The tolling question was one of first impression in this Circuit, and on appeal the Court reversed, holding that intent to flee from justice must be found in order to toll the statute. The case was therefore remanded so that findings of fact could be made as to Jhirad's "intent" at the time he left India.

Thus the matter was once again before Magistrate Goettel, who had handled the original hearing so expertly, for a further development of the intent question. In a letter dated January 7, 1974, the Magistrate informed the parties that witnesses from India would be available on January 29, 1974, and ad-vised the parties to be present on that date for a continuation of the proceedings. Upon receipt of that letter and another letter of the same date from the attorneys for the government of India, counsel for Jhirad brought an order to show cause seeking to bar the taking of any further evidence in this case or, in the alternative, seeking additional discovery. I signed the order to show cause on January 17, 1974, and held a hearing on January 24, 1974.

Petitioner's first contention is that "the District Court has no power to take additional evidence under the mandate from the Court of Appeals." Affidavit of Edward L. Sadowsky, p. 3. In remanding, the Court of Appeals stated:

"We are asked by both sides to rule on the basis of the evidence submitted below on whether the appellant fled from India with the intent to avoid prosecution, though the parties themselves reach opposite conclusions on the issue. We decline to make such a determination and, while reversing the decision, remand the case to the District Court to make findings on the issue of intent."

Jhirad v. Ferrandina, 486 F.2d 442 (2d Cir., 1973). Petitioner interprets the absence of any reference to the taking of further evidence as a direction by the Court of Appeals that no further evidence is to be taken. I disagree. The fact that the Court remanded the case without explicitly addressing itself to the need for taking additional evidence does not constitute a prohibition against taking such evidence. In declining to decide the factual issue of intent, the Court noted that "the parties themselves reach opposite conclusions on the issue." Id. 486 F.2d at 445. Had the Court seen no need for additional evidence, there would have been no purpose in declining to make the determination itself or in remanding the case to the District Court.

Furthermore, such law as may be found in the area of extradition also favors the taking of additional evidence.

Unfortunately, as the Second Circuit has aptly stated, "Neither statutes nor decided cases furnish satisfactory guides as to procedures for obtaining proof upon extradition proceedings." First Nat'l City Bank v. Aristeguieta, 287 F. 2d 219, 222 (2d Cir. 1960), vacated as moot, 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963). Though "satisfactory guides" in this area may be sparse, the Fifth Circuit has ruled that: "Unique rules of 'wide latitude,' govern reception of evidence in Section 3184 hearings." Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970) (citations omitted). Thus, under the "wide latitude" standard I find that further evidence can be taken in this case and I deny the request to bar its admission.*

■ Petitioner's alternative request is for further discovery and he lists eight items or admissions which he believes he is entitled to discover. Affidavit of Edward L. Sadowsky, pp. 6–7, par. 18. These requests are very comprehensive; for example, the third item asks for "[i]nspection of the petitioner's personnel file with the Indian navy."

I find that the granting of these discovery requests would clearly extend the scope of an extradition hearing well beyond its intended and limited purpose and would be an unwarranted excursion into the jurisdiction and province of the requesting country. Petitioner's requests for discovery must be seen as an attempt to have the entire case tried here and, as the Supreme Court has stated, "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and *not to determine whether the evidence is sufficient to justify a conviction.*" Collins v. Loisel, 259 U.S. 309, 316, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922) (emphasis added). See also Grin v. Shine, 187 U.S. 181, 197, 23 S.Ct. 98, 47 L.Ed. 130

(1902); Benson v. McMahon, 127 U.S. 457, 461–462, 8 S.Ct. 1240, 32 L.Ed. 234 (1888).

Lower federal courts have also traditionally warned against allowing too extended discovery in extradition proceedings, for fear that the hearing would be transformed into a full trial of the merits. As early as 1883 this District Court realized that:

"If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government, though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties, which are designed to secure a trial in the country where the crime was committed, through the extradition of the accused, upon sufficient proof, according to our law, to justify a commitment here."

In re Extradition of Wadge, 15 F. 864, 866 (S.D.N.Y.1883), cited with approval in Collins v. Loisel, 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922) and Charlton v. Kelly, 229 U.S. 447, 461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

In 1963, the Second Circuit reiterated this conservative approach holding that "[a]lthough at a hearing of this type, the fugitive has a right to introduce evi-

---

* Petitioner's claim that the taking of further evidence would be an "intolerable burden" is without merit. Remands often necessitate a complete retrial of the issues and while this is admittedly "burdensome", it is neither "intolerable" nor unreasonable.

dence, the right is limited to testimony which explains rather than contradicts the demanding country's proof, and its precise scope is largely in the Commissioner's discretion." United States ex rel. Petrushansky v. Marasco, 325 F.2d 562, 567 (2d Cir. 1963).

█ From the cases cited above it is clear that under the traditional extradition standards discovery is limited and discretionary and under such a standard I would deny the petitioner's broad requests for discovery. If extradition is found to be warranted, petitioner will have ample opportunity in India to defend against the charges.

The petitioner has not, however, based his present request for this additional discovery on the traditional standards applicable in an extradition hearing but instead he argues that the procedural rules and guidelines of federal habeas corpus should be employed in the hearing before Magistrate Goettel.

Petitioner argues that the only issue to be decided is intent which "arises as a disputed issue of fact in a habeas corpus proceeding which tests the jurisdiction of the Court to order extradition, and the trial of that issue must be governed by procedures which obtain in habeas corpus." Affidavit of Edward L. Sadowsky, p. 5, par. 12. There is no case law or statute cited in support of this shift from an extradition hearing standard to a habeas corpus standard and, while the argument may be somewhat novel and interesting, I find no legal basis to support it. The hearing before Magistrate Goettel is an extradition hearing which has been remanded for further development of the intent question. Habeas corpus is merely the method of obtaining a limited review of the extradition hearing since there is no appeal from the extradition hearing itself. Fernandez v. Philips, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925). Thus, the traditional extradition standards discussed above are controlling and the petitioner's request for further discovery is denied.

So ordered.