**Evan Jay JOSEPH, Petitioner,**

v.

**Conrad HOOVER, United States Marshal for the District of the Virgin Islands, and Colin L. Powell, Secretary of State for the United States, Respondents.**

No. 2002–223.

District Court, Virgin Islands,
D. St. Thomas Division and St. John.

March 28, 2003.

Douglas J. Beevers, Esq., St. Thomas, VI, for Petitioner.

Sarah L. Weyler, Asst. U.S. Atty., Esq., St. Thomas, VI, for Respondents.

### MEMORANDUM

MOORE, District Judge.

This matter comes on petitioner Evan Jay Joseph's ["Joseph"] writ of habeas corpus challenging the magistrate judge's December 12, 2002 certification of the British Virgin Islands' [BVI] extradition request and order that petitioner be detained until his extradition. The United States opposes petitioner's writ. For the reasons set forth below, I will affirm the magistrate judge's order.

### I.  FACTUAL BACKGROUND

On July 16, 2000, Joseph allegedly broke into the home of Reginald and Margaret Langtry at their residence in Tortola. Joseph then allegedly attacked Mr. Langtry in the bedroom by grabbing him around the throat and rendering him unconscious. Joseph then bound and gagged Mr. Langtry. Joseph then allegedly attacked Mrs. Langtry after she entered the bedroom by putting a knife to her throat and dragging her toward her husband. After demanding money and threatening to hurt Mr. Langtry, Joseph ransacked the bedroom and stole money and jewelry. During this time, he allegedly punched Mrs. Langtry several times in the head. Joseph then allegedly drove with Mrs. Langtry to a local bank and forced Mrs. Langtry to withdraw money from an ATM machine to give to him. Finally, Joseph allegedly sexually assaulted Mrs. Langtry before releasing her.

Based on the information provided by the Langtrys and fingerprint analysis, BVI police arrested Joseph on August 1, 2000.[1] On August 8, BVI authorities charged Joseph with aggravated burglary, abduction, robbery, indecent assault, common assault, criminal trespass, criminal damage and being armed with an offensive weapon. After his arrest, it was discovered that Joseph should have been serving a one-year sentence, commencing on June 20, 2000, for an unrelated offense. He was subsequently remanded to custody to serve this sentence. Upon the completion of his one-year sentence on June 20, 2001, Joseph was mistakenly released by prison officials notwithstanding these pending charges. Joseph thereafter absconded to St. Thomas and failed to appear in the BVI for his trial on June 27.

In May 2002, the BVI asked that the United States provisionally arrest Joseph pending an extradition request based on an outstanding arrest warrant.[2] On June 21, 2002, the United States filed a com-

---

1.  Joseph escaped custody on August 2, but was recaptured on August 6.

2.  The BVI formally requested Joseph's extradition on September 27, 2002.

plaint for extradition pursuant to 18 U.S.C. § 3184 seeking Joseph's extradition to the BVI. Following an extradition hearing on December 11, 2002, Magistrate Judge Geoffrey Barnard found that the applicable extradition treaty between the United Kingdom and the United States was in full force and effect, that the crimes for which Joseph's surrender was requested were extraditable under the treaty, and that there was sufficient evidence based on the record for the Court to determine that Joseph was extraditable for the charged offenses. Joseph has petitioned for writ of habeas corpus seeking to vacate Judge Barnard's extradition order.

## II. STANDARD OF REVIEW

There is no direct appeal from an extradition decision. *See United States v. Allen*, 613 F.2d 1248, 1252 (3d Cir.1980); *see also Collins v. Miller*, 252 U.S. 364, 369, 40 S.Ct. 347, 64 L.Ed. 616 (1920) (finding that extradition orders cannot be appealed under 28 U.S.C. § 1291 because they do not constitute "final decisions of a district court"). Rather, an individual seeking to challenge a magistrate judge's extradition order must pursue a writ of habeas corpus. The scope of habeas corpus review of a magistrate judge's extradition order under a treaty with a foreign country is extremely limited. "Habeas corpus is available only to inquire [1] whether the magistrate [judge] had jurisdiction, [2] whether the offense charged is within the treaty and, [3] by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Sidali v. INS*, 107 F.3d 191 (3d Cir.1997) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925)).

## III. DISCUSSION

Joseph does not challenge the first basis for review, Judge Barnard's jurisdiction over this matter. He does argue under the second, however, that the extradition documents failed to include the text of the statute of limitations for the offenses and that three of the offenses are not extraditable under the treaty. Joseph also asserts under the third basis for review that there was insufficient evidence presented to establish that he committed the offenses. I will address each in turn.

### A. Statute of limitations

Article VII(2)(c)(iii) of the 1972 extradition treaty between the United Kingdom and the United States provides: "The request shall be accompanied by the text, if any, of the law imposing any time limit on the institution of proceedings for that offense." Contrary to Joseph's argument that the extradition request failed to provide any information pertaining to any statute of limitations, the last paragraph of the October 9, 2002 extradition request clearly stated: "There is no statute of limitations barring the prosecution of these offenses." Therefore, Joseph's argument is without merit.

### B. Extraditable Offenses

Article III of the 1972 treaty provides:

(1) Extradition shall be granted for an act or omission the facts of which disclose an offense within any of the descriptions listed in the Schedule annexed to this Treaty, which is an integral part of the Treaty, or any other offense, if:

(a) the offense is punishable under the laws of both Parties by imprisonment or other form of detention for more than one year or by the death penalty;

(b) the offense is extraditable under the relevant law, being the law of the United Kingdom or other territory to which this Treaty applies by virtue of

sub-paragraph (1)(a) of Article II; and

(c) the offense constitutes a felony under the law of the United States of America.

Joseph contends that three of the offenses—armed with an offensive weapon, criminal trespass, and common assault—do not constitute felonies, and are, thus, not extraditable. His arguments fail.

### 1. Armed with an offensive weapon

■ Section 286(1)(b)(ii) of the Criminal Code of the British Virgin Islands of 1997 provides that:

Any person who is armed with any firearm, cutlass, bludgeon or other offensive weapon or instrument, with intent to commit any criminal act, shall be deemed to be a rogue and a vagabond, and commits an offense and is liable on conviction, (i) for a first offense … to imprisonment for a term not exceeding one year; (ii) for every subsequent offense under this section, or for an offense under this section after having been previously convicted as a rogue and vagabond under any law in force immediately before the coming into force of this Code, to imprisonment for a term not exceeding two years.

Joseph argues that his charged offense is non-extraditable because it is not punishable by confinement for more than one year. According to British authorities, however, Joseph has twice been convicted of larceny, in 1987 and 1988, in violation of section 4 of the Larceny Act. As these convictions make Joseph a "rogue and vagabond" under BVI law[3] and the laws on which he was convicted were in force before the enactment of the Criminal Code of 1997, Joseph qualifies for the enhanced two-year sentence under section 286(1)(b)(ii). Therefore, the offensive weapon charge is a felony subject to extradition.

■ The United States concedes that section 286(1)(b)(ii) is not one of the offenses listed in the treaty schedule. It reasonably argues, however, that this offense has dual criminality in the United States. "Dual criminality does not require that an offense in a foreign country have an identical counterpart under the laws of the United States. Dual criminality requires only that the acts alleged constitute a crime in both jurisdictions. Each state may name and penalize the crime differently." *Bozilov v. Seifert,* 983 F.2d 140, 142 (9th Cir.1992) (citations omitted). In this instance, the government correctly contends that section 286(1)(b)(ii) is analogous to 14 V.I.C. § 442[4] and 14 V.I.C. § 1862.[5] As Joseph was armed during the

---

**3.** Section 31 of the Small Charges Act, Cap 71 of the laws of the British Virgin Islands deemed any offender of section 4 of the Larceny Act to be a rogue and vagabond.

**4.** Whoever, with intent to commit an offense therein, breaks and enters the dwelling house, building, or structure of another, in which there is at the time a human being—
(1) being armed with a dangerous weapon; or
(2) arming himself therein with such a weapon; or
(3) being assisted by a confederate actually present; or

(4) while engaged in effecting such entrance, or in committing any offense therein, or in escaping therefrom, assaults any person—is guilty of burglary in the first degree and shall be imprisoned not less than 10 years nor more than 20 years. 14 V.I.C. § 442.

**5.** A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another perpetrator of the crime:
(1) Causes physical injury which is incapacitating in any way to any person who is not a perpetrator of the crime; or

burglary/robbery and assault of the Langtrys, the charged offense under section 286 meets the requirements of extradition under Article III of the treaty. *Cf. DeSilva v. DiLeonardi*, 125 F.3d 1110, 1114 (7th Cir.1997) ("Alleged conduct is considered criminal in this country if it would be unlawful under federal statutes, the law of the state where the accused is found, or the law of the preponderance of states."); *Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir.1989) ("not[ing] that the language of the [United Kingdom–United States] Extradition Treaty, which states that the alleged conduct must be 'punishable under the laws of both parties,' has been interpreted to include both federal and state law.") (citation omitted); *In re Molnar*, 202 F.Supp.2d 782 (N.D.Ill.2002) (finding that the dual criminality element was met for offense violating both Hungarian and Illinois law); *In re Glantz*, 1995 WL 495644 (S.D.N.Y. Aug. 21, 1995) (finding that dual criminality was established for offense violating both Dutch and New York law)

### 2. Criminal Trespass

■ Joseph also argues that his charged offense of criminal trespass under section 74 of the BVI Criminal Code is non-extraditable because it is not punishable as a felony. Apparently, Joseph has focused solely on subsection 1 of section 74, which provides that "[a] person who enters into or upon any property in the possession of another with intent to commit an offense ... commits an offense and is liable on conviction to imprisonment for a term not exceeding one year." Any reliance on sub-

section 1, however, is misplaced because Joseph has been charged under subsection 2 of the statute. Subsection 2 states that "[i]f the property upon which the offense is committed under section (1) is ... a building or tent used as a human dwelling ... the offender is liable on conviction to imprisonment for a term not exceeding two years." Thus, the charge of criminal trespass according to the facts of this case is a felony and is, therefore, extraditable because it corresponds to item 15 (burglary) of the schedule of extraditable offenses annexed to the 1972 treaty and satisfies the requirement of dual criminality.[6]

### 3. Common Assault

■ Finally, Joseph contests the magistrate judge's order of extradition for his charged offense of common assault under section 183 of the BVI Criminal Code for common assault. Section 183 provides

> Any person who unlawfully assaults another commits an offense and, if the assault is not committed in circumstances for which a greater punishment is provided by this or any other law, is liable on conviction to imprisonment for a term not exceeding one year or to a fine not exceeding one thousands dollars, or both.

Ignoring the second clause, Joseph argues that this section's penalty of not more than one year makes his common assault charge merely a misdemeanor and not extraditable. Common assault under section 183 is a misdemeanor, however, only *"if the assault is not committed in circumstances for which a greater punishment is provid-*

---

(2) Displays, uses or threatens the use of a dangerous weapon.

Whoever is convicted under this section shall be imprisoned not more than 20 years and if the conviction is a second or subsequent conviction under this chapter, then *not less than 7 years.*

14 V.I.C. § 1862.

**6.** The offense of criminal trespass in this instance is analogous to both 14 V.I.C. § 442(1), armed with a dangerous weapon during a burglary, and 14 V.I.C. § 442(4), assaulting a third party in the course of a burglary.

ed by this or any other law." As Joseph is charged with assaulting the Langtrys in the course of robbing them, his acts were committed in circumstances constituting assault with intent to rob or a malicious wounding,[7] both of which are listed on the schedule of extraditable offenses to the 1972 Treaty, items 14 and 3, respectively, and are, thus, extraditable.

### C. Probable Cause

■ Joseph's final argument in his effort to avoid extradition is that there was insufficient evidence regarding his identity as the person committing the offenses or that the offenses even occurred. As noted by the Third Circuit Court of Appeals,

the probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings. The burden of the government is to offer evidence that 'would support a reasonable belief that [the defendant] was guilty of the crime charged.' The probable cause standard applicable in extradition proceedings has been described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'

Sidali, 107 F.3d at 199 (internal citations omitted). Thus, in an extradition proceeding, the magistrate judge's role is "to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." Id. (citation omitted). Accordingly, the magistrate judge need only determine that a reasonable belief exists that the defendant committed the charged offense, and not that he is guilty beyond a reasonable doubt. See id. (quoting United States ex rel. Lo Pizzo v. Mathues, 36 F.2d 565, 568 (3d Cir.1929)).

A review of the record clearly reveals that sufficient evidence existed to satisfy the extradition's probable cause requirement. The affidavit of Odia Sedina Reid, Crown counsel, in support of Joseph's extradition and based on direct statements from the Langtrys and BVI law enforcement officers detailed the offenses allegedly committed by Joseph. This affidavit further stated that the Langtrys had twice identified Joseph after the attack on July 26 and July 30, 2000, and that Joseph was arrested shortly afterward based on the Langtrys's description. Upon Joseph's arrest, a search incident to arrest uncovered several pieces of jewelry stolen from Mrs. Langtry on Joseph's person. Moreover, his fingerprints matched those found at the Langtrys' home. Finally, Joseph was positively identified at his extradition hearing by Inspector Alwyn James, a BVI police officer familiar with both Joseph and the alleged offenses. Based on this record, Magistrate Judge Barnard properly found "probable cause to believe that the defendant committed the charged offense(s)." As I find no error in the magistrate judge's ruling, I reject Joseph's argument that probable cause was lacking and find that there was reasonable ground to believe Joseph is guilty. Accordingly, I will affirm Judge Barnard's extradition order.

An appropriate order follows.

### ORDER

For the reasons set forth in the foregoing Memorandum of even date, it is hereby

**ORDERED** that petitioner's writ of habeas corpus is **DENIED**; and it is further

**ORDERED** that the magistrate judge's certification of extradition and order of

---

7. See Commissioner of Police of Metropolis v. Wilson (Clarence), 3 All E.R. 448 (H.L.1983), at [1984] AC 242 (Lexis–Nexis) (noting that common assault is a lesser included offense of robbery).

commitment on December 12, 2002 is **AF-FIRMED.**